11 N.J. Super. 81 (1951)
77 A.2d 871
FLORENCE B. SLOCUM, DIRECTOR OF UNION COUNTY WELFARE BOARD, PLAINTIFF-RESPONDENT,
v.
JOHN KRUPY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1950.
Decided January 5, 1951.
*83 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Nathan Reibel argued the cause for the appellant.
Mr. Victor H. Eichhorn argued the cause for the respondent.
The opinion of the court was delivered by JACOBS, S.J.A.D.
The defendant seeks to have an order of the Juvenile and Domestic Relations Court of Union County, directing that he contribute the sum of $20 per month towards the support of his indigent father, set aside on the ground that during his minority his father had abandoned and deserted and failed to support him. See R.S. 44:7-19.
The Old Age Assistance Act of 1936 provided that it shall be the duty of the Director of the County Welfare Board to ascertain the applicant's relatives chargeable by law for his support and compel them to render assistance. P.L. 1936, c. 31, p. 63. It further provided that in the event any relative responsible for the applicant's support failed to perform the Director's order, the Court of Common Pleas, upon complaint, was authorized to summon the defendant and order payment *84 of such amount as the circumstances may require. In the general statutory revision of 1937 the foregoing was embodied in R.S. 44:7-19. In 1938 the Court of Common Pleas was authorized to initiate the proceeding upon certification from the Director and its jurisdiction was made state-wide. P.L. 1938, c. 361, p. 911. In 1940 the Legislature, in several enactments, expressed the general policy that a child deserted during his minority by his parent may be excused from supporting him (P.L. 1940, cc. 55, 56, 57) and in accordance with this policy the Court of Common Pleas was authorized in a proviso in R.S. 44:7-19, to revoke the Director's order for support or reduce its amount where it appeared that the child "was abandoned and deserted and said applicant failed to support and maintain" him during his minority.
In 1943, R.S. 44:7-19 was again amended. P.L. 1943, c. 164, p. 479. At this time the Legislature evidently contemplated vesting the Court of Juvenile and Domestic Relations with full authority, concurrent with the Court of Common Pleas, to entertain proceedings against children to compel support of their indigent parents. Thus it expressly enacted that either the Court of Common Pleas or the Court of Juvenile and Domestic Relations upon certification by the Director could summon the defendant, conduct the necessary proceedings, and enter an appropriate order for such support as the circumstances may require in the court's discretion. Inadvertently, the proviso in R.S. 44:7-19 was not specifically altered to include reference to the Court of Juvenile and Domestic Relations but the legislative intent, apparent from the entire enactment, seems sufficiently clear to justify supplying the omission. Orvil v. Woodcliff, 64 N.J.L. 286, 289 (E. & A. 1900); Wagner v. County Employees Pension Commission, 130 N.J.L. 230, 234 (E. & A. 1943). In actual practice (cf. Burlington County v. Martin, 129 N.J.L. 92, 93 (E. & A. 1942); Martini v. Civil Service Commission, 129 N.J.L. 599, 603 (Sup. Ct. 1943)), the Court of Juvenile and Domestic Relations construed the pertinent enactments as vesting it with adequate power under the proviso and the *85 propriety of this construction is not questioned by the parties. See R.S. 9:18-14(c). Indeed, denial of the power would lead to the incongruous situation in which the Court of Juvenile and Domestic Relations would be compelled to enter an order for support without regard to the legislative policy and the Court of Common Pleas, now the County Court, would be authorized to disregard the proceedings in the Court of Juvenile and Domestic Relations and invoke the legislative policy upon a direct application to enforce or review the original order of the Director. See Giordano v. City Commission of the City of Newark, 2 N.J. 585, 594 (1949), where our Supreme Court recently restated the principle that where a literal interpretation of the statute "would lead to anomalous or absurd results, the spirit of the law controls the letter."
In the instant matter, the statement under Rule 1:2-23 of the proceedings before the Court of Juvenile and Domestic Relations discloses that pursuant to written certification from the Director of Welfare the defendant, a relative who had failed to perform the order of the Director with regard to the support of his applicant father, was directed by summons to appear before the court. On the return day there was testimony by the Director, the defendant and his brother. The defendant at that time contended that he should not be subjected to an order for support because of his father's conduct towards him as a child but the court on February 23, 1950, ordered that he contribute $15 per month towards his father's support. Thereafter counsel for the defendant requested a rehearing which was granted. At the rehearing the defendant testified that at the age of 12 he was committed to the State Home for Boys at Jamesburg on his father's complaint, thereafter he was released and later recommitted, and when ultimately released, placement and employment were obtained for him away from home. His testimony further indicated that his father had not adequately supported their family, which included five children, and consequently his mother had been obliged to work from time to time to aid in their support. The record discloses that in June, 1923, a complaint *86 was filed by the defendant's father for incorrigibility and the defendant was committed to the State Home for Boys at Jamesburg upon order of a judge of the Court of Common Pleas. On April 13, 1950, the Court of Juvenile and Domestic Relations determined that the evidence did not establish abandonment and desertion and failure to support within the proviso in R.S. 44:7-19 and ordered that the defendant pay $20 per month towards his father's maintenance. Notice of appeal to the Appellate Division from this order was filed on May 11, 1950.
On May 11, 1950, the defendant also filed a notice that he would apply to the Union County Court for an order revoking or modifying the order of the Court of Juvenile and Domestic Relations, and the accompanying affidavits largely restated the facts which had been presented to the Court of Juvenile and Domestic Relations. On May 19, 1950, the Union County Court denied the application and notice of appeal to the Appellate Division from this denial was filed on June 7, 1950. We find no authority for this phase of the proceedings. Appeals in causes determined by the Court of Juvenile and Domestic Relations are taken directly to the Appellate Division and not to the County Court. See Rule 6:2-5. The proviso in R.S. 44:7-19 upon which the defendant relied authorizes the County Court in a proceeding properly initiated directly in that court to revoke or modify an order of the Director; it contains no suggestion of authority in the County Court to review an order of the Court of Juvenile and Domestic Relations.
The defendant contends that the proceedings before the Court of Juvenile and Domestic Relations should have been by complaint under Rule 6:4-1 rather than by certification under the earlier provision of R.S. 44:7-19, and we consider this to be correct. John S. Westervelt's Sons v. Regency, Inc., 3 N.J. 472 (1950). However, this point is now raised for the first time, no mention thereof having been made at any earlier stage of the proceedings. The defendant had ample notice and fair opportunity to be heard in the Court of *87 Juvenile and Domestic Relations; indeed, after the original hearing which resulted in an adverse determination he was afforded a rehearing, testimony was again taken, and he was again heard fully on the single issue and defense raised by him. He was in no wise prejudiced by the procedural infirmity and, under the circumstances, we do not consider it sufficient basis for reversal. Rule 1:2-20(b); State v. Jones, 4 N.J. 374 (1950).
The defendant further contends that the Court of Juvenile and Domestic Relations failed to give effect to the policy expressed in the proviso in R.S. 44:7-19. We find this contention to be without merit. The commitment of the defendant by order of a judge of the Court of Common Pleas was presumably upon sufficient cause and did not indicate dereliction by his father, and the testimony that his father had not adequately supported their family necessitating work from time to time by his mother did not charge or establish any willfulness. The statutory proviso requires an affirmative showing of actual abandonment and desertion and failure to support and it seems to us that the Court of Juvenile and Domestic Relations was entirely justified in its finding that the defendant's evidence failed to establish the type of parental misconduct contemplated by the severe legislative phraseology. Cf. Frank v. Juvenile, &c., Court of Essex County, 137 N.J.L. 364, 368 (Sup. Ct. 1948); In re A.B.M., 132 N.J. Eq. 434, 441 (E. & A. 1942).
The order of February 23, 1950, directing that the defendant pay $15 per month was entered after a hearing which included testimony with respect to the extent of the defendant's financial ability to contribute towards his father's support. After rehearing, pursuant to the defendant's application, the court not only affirmed its determination that he make contribution but increased the amount thereof to $20 per month. There is nothing in the record to support this increase; the statement of the proceedings before the Court of Juvenile and Domestic Relations indicates that the testimony during the rehearing did not bear on the defendant's *88 resources but was confined to his defense based on the proviso in R.S. 44:7-19.
The order of the Court of Juvenile and Domestic Relations is modified to provide that the defendant contribute $15 per month towards his father's support and as thus modified is affirmed, without costs.